GENERAL MOTORS CORPORATION, Petitioner in No. 83–3418,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and William Ruckelshaus, Administrator, Respondents.

FORD MOTOR COMPANY, Petitioner in No. 83–3432,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and William D. Ruckelshaus, Respondents.

Nos. 83–3418, 83–3432.

United States Court of Appeals, Third Circuit.

Argued May 17, 1984.

Decided June 27, 1984.

Louis E. Tosi (argued), William L. Patberg, Fuller & Henry, Toledo, Ohio, for General Motors; Julius J. Hollis, General Motors Legal Staff, General Motors Corp., Detroit, Mich., of counsel.

Norman W. Bernstein (argued), Douglas Cutler, Ford Motor Co., Dearborn, Mich., Turner T. Smith, Jr., William B. Ellis, Hun-

ton & Williams, Richmond, Va., for Ford Motor Co.

Dov Weitman (argued), U.S. Environmental Protection Agency, F. Henry Habicht, II, Asst. Atty. Gen., Jose R. Allen, Chief, Environmental Defense Section, Land & Natural Resources Div., Catherine A. Cotter, Atty., U.S. Dept. of Justice, Washington, D.C., for respondent; A. James Barnes, General Counsel, Susan G. Lepow, Asst. General Counsel, U.S. Environmental Protection Agency, Washington, D.C., for respondent.

Before GIBBONS, HUNTER, and BECKER, Circuit Judges.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

This case involves the June 30, 1984 deadline for compliance with the pretreatment standards governing integrated electroplating facilities. *See* 40 C.F.R. Part 413 (1983). Petitioners Ford Motor Company ("Ford") and General Motors Corporation ("GM") have urged the Environmental Protection Agency ("EPA") to initiate rulemaking to extend the June 30, 1984 compliance date. Those requests were denied. *See* 48 Fed.Reg. 24,933, 24,939 (1983). GM and Ford now petition this court to review the final decision of the Administrator of EPA denying their requests for rulemaking. For the reasons stated below, we will deny the petitions of Ford and GM.

### I. *PRIOR AGENCY AND COURT ACTION*

This appeal involves only the date by which compliance with the integrated electroplating pretreatment standards is mandated. This court has previously upheld the standards against substantive challenges by these petitioners and others. *National Association of Metal Finishers v. EPA*, 719 F.2d 624 (3d Cir.1983), *cert. granted,* —— U.S. ——, 104 S.Ct. 2167, 80 L.Ed.2d 551 (1984) [hereinafter referred to as *"Metal Finishers"*]; *Ford Motor Co. v. EPA*, 718 F.2d 55 (3d Cir.1983) [hereinafter referred to as *"Ford"*].

The present challenge to the June 30, 1984 compliance deadline is directly related to the history of the pretreatment regulations in the agency and courts. EPA first published electroplating pretreatment standards on September 7, 1979, anticipating an October 7, 1979 effective date and an October 12, 1982 compliance deadline. 44 Fed. Reg. 52,590 (1979). The anticipated deadline was designed to afford all electroplaters the maximum three year compliance time permitted by section 307(b) of the Clean Water Act, 33 U.S.C. § 1317(b) (1982).[1] *See* 44 Fed.Reg. 52,595 (1979). The standards published on September 7, however, were not made effective as to "integrated" electroplating facilities.[2] EPA acknowledged that the obligation of integrated facilities should not begin to run until the effective date of the proposed "combined wastestream formula." 45 Fed. Reg. 19,246 (1980); *see* 40 C.F.R. 403.6(e) (1983) (combined wastestream formula); *id.* § 413.04. This court discussed the operation of the combined wastestream formula at length in our *Metal Finishers* decision. *See* 719 F.2d at 650–56.

The concept of a combined wastestream formula, first proposed in conjunction with the "National Pretreatment Strategy" policy statement, 43 Fed.Reg. 27,758 (1978), was the subject of many critical comments by affected parties. On January 28, 1981, EPA published a revised combined wastestream formula, with an effective date of March 13, 1981. *See* 46 Fed.Reg. 9404, 9442 (1981). The agency reaffirmed that integrated electroplating facilities would be given three years from the effective date

---

1. Section 307(b) provides, in relevant part: "Pretreatment standards under this subsection shall specify a time for compliance not to exceed three years from the date of promulgation ...."

2. "Integrated" facilities combine the process wastestream from their electroplating operations with other wastestreams prior to pretreatment. *Metal Finishers,* 719 F.2d at 635; *see* 40 C.F.R. 413.02(h) (1983) (definition of "integrated facility").

of the combined wastestream formula to comply with applicable categorical pretreatment standards. *Id.* at 9464.

This court's decision in *National Resources Defense Council, Inc. v. EPA*, 683 F.2d 752 (3d Cir.1982) [hereinafter referred to as "*NRDC*"], chronicles the fate of the pretreatment standards following the January 28, 1981 publication of the combined wastestream formula. On January 29, 1981, President Reagan issued an order postponing for sixty days the effective date of all final but not as yet effective regulations. Thus, the effective date for the combined wastestream formula became March 30, 1981. The President subsequently issued Executive Order 12291, which directed agencies to postpone the effective dates of certain regulations and to reevaluate those regulations in accordance with specified criteria. *See NRDC*, 683 F.2d at 755–56. On March 27, 1981, the Administrator ordered the indefinite suspension of the combined wastestream formula, citing as authority only Executive Order 12291.

The Administrator subsequently proposed a new effective date for the combined wastestream formula, January 21, 1982, but simultaneously initiated a rulemaking in support of his proposal to extend the indefinite suspension commenced in connection with Executive Order 12291. *See NRDC*, 683 F.2d at 756–58. After notice and comment, the Administrator adopted that course and suspended the effective date of the formula. NRDC petitioned this court to set aside the indefinite suspension of the combined wastestream formula as being contrary to law. On July 8, 1982, we issued the *NRDC* opinion granting NRDC's petition and ordering the Administrator to reinstate the combined wastestream formula as of March 30, 1981.[3] The result of the retroactive reinstatement was to reestablish March 30, 1984 as the compliance deadline. We explained that such a remedy was necessary in order to return all parties to the status quo prior to

the agency's unlawful actions. *See NRDC*, 683 F.2d at 768. Thus, petitioners had approximately twenty-four months from the date of our mandate in which to comply with the electroplating standards.

Following our decision in *NRDC*, petitioners Ford and GM returned to the agency to request a new rulemaking to amend the combined wastestream formula. [App. at 293, 309]. Petitioners urged the agency to adopt major substantive changes in the proposed regulations and, in any event, to extend the compliance deadline in order to afford integrated facilities a full three years to comply. The Administrator denied petitioners' request to initiate rulemaking on May 18, 1983. 48 Fed.Reg. 24,933, 24,-939 (1983); *see Metal Finishers*, 719 F.2d at 667. That denial is the subject of this appeal.

Petitioners' substantive challenges to the combined wastestream formula were raised before this court and resolved in the *Metal Finishers* and *Ford* decisions. In connection with those appeals, this court entered an order setting June 30, 1981 as the new retroactive effective date of the combined wastestream formula in order to facilitate orderly appellate review. June 30, 1984 was thereby established as the new compliance deadline. *See Metal Finishers*, 719 F.2d at 635, 636 & n. 8. That compliance date is presently in effect. As noted previously, this appeal deals only with the compliance deadline issue. Ford and GM have petitioned this court to set aside the Administrator's denial of their requests for a new rulemaking on that issue.

## II. *DISCUSSION*

Our review of the Administrator's refusal to initiate a new rulemaking is constrained by section 10(e) of the Administrative Procedure Act. We must uphold agency action unless we find it to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 702(2)(A) (1982). *See Metal Finishers*,

---

**3.** On September 28, 1982, the agency published an order carrying out this court's mandate in *NRDC*.

719 F.2d at 637. We further note that the proponent of an agency action bears the burden of proof as to the proposed course of action. 5 U.S.C. § 556(d). Ford and GM, the parties urging the agency to suspend the combined wastestream formula and initiate a new rulemaking, thus bore the burden of proving to the Administrator that their proposal should have been adopted. *See United States Steel Corp. v. Train*, 556 F.2d 822, 834 (7th Cir.1977).

The submissions made to EPA by Ford and GM did not include new factual data to support a later compliance date. Rather, petitioners relied primarily upon the existing rulemaking record and upon arguments based on the procedural history of the combined wastestream formula. Ford and GM argued, in general terms, that the process of designing, planning, constructing and "debugging" facilities so as to comply with EPA's standards, as well as training employees in new technology, would be costly and time-consuming. Petitioners relied heavily upon the fact that the Administrator had previously granted integrated electroplating facilities the maximum three year compliance time permitted by the Clean Water Act. Petitioners further pointed to a study commissioned by the agency, the Versar Report [App. at 492–527], which concluded that three years would be necessary "in most cases" to achieve compliance with EPA's metal finishing regulations. Ford and GM argued that they had been deprived of more than a year of compliance time as a result of the Administrator's procedural error in suspending the effective date of the combined wastestream formula and as a result of this court's remedy of retroactive reinstatement. They contended that it would be inequitable to require them to suffer for the Administrator's error, and that the existing record could not support a compliance timetable of less than three full years.

In denying the petitions of Ford and GM, the Administrator issued a two-pronged re-

joinder. First, he asserted that he was powerless to extend the compliance deadline. He reasoned that this court's mandate in *NRDC* established the "promulgation" date for purposes of section 307(b), *see* note 1 *supra*, thereby circumscribing the Administrator's authority to set a compliance date later than June 30, 1984.

The Administrator further determined, however, that an extension of time would be "unwarranted by the facts." 48 Fed. Reg. 24,933, 24,940 (1983). He pointed to the lack of specific factual support for petitioners' requested relief. Further, he explained that the technology necessary to achieve compliance was not new and that petitioners should have been able to undertake initial planning and design work in spite of uncertainties about the final contours of the standards governing integrated facilities. The Administrator, like Ford and GM, drew support for his position from the Versar Report. In addition, he cited the problem of competitive imbalances that would result if integrated facilities were subject to a more generous compliance deadline than their smaller, more economically vulnerable, counterparts. Finally, the Administrator emphasized that he would utilize his enforcement discretion under section 309(a)(5)(A) of the Clean Water Act to ameliorate any inequitable results in particular cases.

■ We cannot say that the Administrator acted arbitrarily or capriciously, or that he committed an abuse of discretion, when he denied petitioners' requests to initiate rulemaking. We agree with the Administrator that Ford and GM did not submit any significant *new* factual information in support of their petitions for rulemaking. Moreover, the Baseline Monitoring Reports later submitted to EPA by petitioners reveal that the vast majority of petitioners' integrated electroplating facilities *will* be in compliance by June 30, 1984.[4] The Administrator points to instances where petitioners did not undertake significant steps

---

4. Counsel confirmed at oral argument that further progress had been made toward compliance since the filing of the briefs. The parties, of course, continue to maintain that full compliance will not be possible by June 30, 1984.

toward compliance for months following our mandate in *NRDC.* Certainly, the inability to achieve timely compliance at those facilities is not sufficient to require a new rulemaking. In short, the mere failure of these petitioners to comply fully with the electroplating standards by June 30, 1984 is not sufficient reason to strike down the Administrator's decision.

Ford and GM offer two reasons why their failure to submit substantial new evidence should not be fatal to their cause. First, petitioners rely on evidence already before the agency, namely the Versar Report, to support their request for rulemaking. Second, they rely on the fact that the Administrator has, in the past, permitted the integrated electroplaters three years for compliance.

We believe, however, that the Administrator adequately addressed petitioners' contentions. It is true that the Versar Report recommends three years for compliance "in most cases." As the Administrator noted, the Versar Report was designed to estimate the compliance time necessary to achieve the more stringent "second phase" of electroplating pretreatment standards, the metal finishing standards promulgated on July 15, 1983. Thus, it provides an "upper bound" estimate of the time necessary for compliance. Moreover, the Versar Report substantiates the Administrator's contention that the imposition of a strict compliance schedule facilitates the prompt completion of a project. Each project in the Versar Report that had a specific project deadline was completed within an adjusted twenty-four month time period.

The Administrator also satisfactorily explained his apparent change-of-heart as to the necessity of three years for compliance. The initial three year compliance period had been responsive to an analysis of market impact as well as direct costs of compliance. The passage of time has affected the balance of equities that the Administrator originally struck when he approved a three year compliance period for *all* electroplating facilities. In particular, the Ad-

ministrator voiced the concern that an extension of the compliance date for integrated electroplaters would place smaller non-integrated facilities, which are not subject to the combined wastestream formula, at a competitive disadvantage because of their earlier compliance deadline.

■ Finally, we note the Administrator's repeated assertions that a particular party's good faith efforts to achieve compliance will be taken into consideration by the agency in enforcement actions addressed to *specific instances* of non-compliance. 48 Fed.Reg. 24,936, 24,941 (1983); Transcript of Oral Argument of May 17, 1984 at 57; *see* 33 U.S.C. § 1319(a)(5)(A) (1982). On the facts of this case, where Ford and GM can show only isolated examples of their own facilities that may be unable to achieve compliance by June 30, 1984, a later particularized appeal to enforcement discretion, rather than the initiation of a new industry-wide rulemaking, is the more appropriate course.

## III. *CONCLUSION*

We hold that the Administrator did not act arbitrarily or capriciously in refusing to initiate a new rulemaking to extend the July 30, 1984 compliance deadline for integrated electroplating facilities. Because we uphold the Administrator's action on that ground, we need not decide whether he was correct in his alternative ruling that he lacked the power to grant such an extension. *Cf. Department of Environmental Resources v. EPA,* 618 F.2d 991, 998–1000 (3d Cir.1980) (agency may not indefinitely postpone deadlines by reproposing and repromulgating standards). Accordingly, for the reasons stated above, we will deny the Petitions for Review brought by Ford and GM.